CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Russell Handy, Esq., SBN 195058
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shirley Lindsay**, | **Case:**2:17-CV-00333-ODW-MRW |
| Plaintiff, | **Plaintiff's Opposition to Defendants' Motion for Summary Judgment** |
| v. | |
| **1777 Westwood Limited Partnership,** a California Limited Partnership; **Farzin Halavy**; **Sutthiwan Soontornvipat** | Date:      April 23, 2018<br>Time:      1:30 p.m.<br>Ctrm:      5D (5th Floor)<br><br>Hon. Judge Otis D. Wright II |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES.................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................ 1

   I.     PRELIMINARY STATEMENT .................................................. 1

   II.    LEGAL STANDARD.................................................................. 1

   III.   THE DISABLED PARKING STALL, ACCESS AISLE
            AND PATH OF TRAVEL REMAIN NON-
            COMPLIANT .......................................................................... 2

   IV.   The Store Had Barriers That Were Readily Removed ................ 5

    A. The Plaintiff Encountered This Violation and Is Being Deterred
    From Patronage.................................................................................. 8

   V.    THE LACK OF COMPLIANT PARKING IS
            UNLAWFUL UNDER CALIFORNIA LAW ........................ 9

   VI.   THE COURT SHOULD RETAIN SUPPLEMENTAL
            JURISDICTION ...................................................................... 9

   VII.  CONCLUSION ........................................................................ 14

Opposition to Defense MSJ               **Case No**. 2:17-CV-00333-ODW-MRW

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) .................... 1

4

*Aydin        Corp.        v.        Loral        Corp.*

5

718 F.2d 897 (9th Cir. 1983) ........................................................ 10

6

*Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995)................................ 11

7

*Carnegie-Mellon        Univ.        v.        Cohill*,

8

484 U.S. 343 (1988).......................................................... 10

9

*Cullen        v.        Netflix,        Inc.*,

10

880 F.Supp.2d 1017 (N.D. Cal. 2012) .................................... 9

11

*Enercomp,    Inc.    v.    McCorhill    Pub.,    Inc.*,

12

873 F.2d 536 (2nd Cir. 1989) ............................................... 12

13

*Grove        v.        De        La        Cruz*,

14

407 F. Supp. 2d 1126 (C.D. Cal. 2005)................................ 13

15

*Hernandez    v.    Polanco    Enterprises,    Inc.*,

16

624 Fed.Appx. 964 (9th Cir. 2015) ................................ 12

17

*In re Nucorp Energy Securities Litigation*, 772 F.2d 1486, 1491 (9th Cir.

18

1985)................................................................ 11

19

*LaFleur        v.        S&A        Family        LLC*,

20

2014 WL 2212018 (C.D. Cal. 2014)................................ 13

21

*Langer        v.        McHale*,

22

2014 WL 5422973 (S.D. Cal. 2014) ................................ 13

23

*Martinez    v.    Longs    Drug    Stores,    Inc.*,

24

2005 WL 2072013 (E.D. Cal. 2005)................................ 13

25

*Molski        v.        M.J.        Cable,        Inc.*,

26

481 F.3d 724 (9th Cir. 2007)................................ 9

27

*Munson        v.        Del        Taco,        Inc.*,

28

2006 WL 4704611 (C.D. Cal. 2006)................................ 13

ii

*Rosado v. Wyman*,
397 U.S. 397 (1970) ............................................................... 10

*Rush v. Denco Enterprises, Inc.*,
857 F. Supp. 2d 969 (C.D. Cal. 2012) ................................. 5

*Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) ................. 10

*Scott v. Harris*, 550 U.S. 372, 378, (2007) .............................. 2

*State of Ariz. v. Cook Paint & Varnish Co.*, 541 F.2d 226, 227 -228 (9th
Cir. 1976) ............................................................... 11

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) . 10

**Statutes**

1991 Standards § 4.1.2(5)(b) ............................................ 6

2010 Standards § 208.2.4 ................................................. 6

Civ. Code § 51 (f) ...................................................... 9

Opposition to Defense MSJ                    **Case No**. 2:17-CV-00333-ODW-MRW

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PRELIMINARY STATEMENT

Plaintiff Shirley Lindsay, has sued the defendants because their Restaurant failed to have a compliant handicap parking space, access aisle, path of travel to the accessible entrance to the Restaurant, and a lack of an accessible restroom. After this lawsuit was filed, the defendants attempted to remedy the violations. Unfortunately, the parking, access aisle, and path of travel are still far from compliant. Based on Plaintiff's expert's recent site inspection, several barriers still exist with respect to each barrier. (Pl.'s MSJ, SUF #26-34). Therefore, Defendants' motion for summary judgment is premature. Pursuant to *Doran*, Plaintiff filed a motion to amend the Complaint (ECF-43) to clarify the remaining violations to avoid piecemeal litigation over the same issues, and to identify the additional barriers found at the property during the expert inspection that also hinder Plaintiff from accessing the restaurant when she returns. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008). Finally, even if the Court finds injunctive relief moot, principles of justice and judicial efficiency support the Court retaining jurisdiction over Plaintiff's remaining state law claims.

## II.  LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence

1

is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* A court may consider the pleadings, discovery and disclosure materials, and any affidavits on file. Fed.R.Civ.P. 56(c)(2). Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, (2007). While Plaintiff seeks partial summary judgment, Defendant seeks full summary judgment: that there are no issues of fact in dispute, and the case can be decided as a matter of law. For the reasons described *infra*, Defendant's motion for summary judgment fails.

## III.   THE DISABLED PARKING STALL, ACCESS AISLE AND PATH OF TRAVEL REMAIN NON-COMPLIANT

Defendants base their entire motion for summary judgment (ECF-50) on the predication that all of the alleged barriers have been remediated. (Def Statement of Uncontroverted Facts and Conclusions of Law, ECF-50-3, SUF #4 & 5). On February 27, 2017 counsel for Defendant 1777 Westwood Limited Partnership and Farzin Halavy notified Plaintiff's counsel via email that all alleged violations of the ADA and ADAAG were remedied. (Def Statement of Uncontroverted Facts and Conclusions of Law, ECF-50-3, SUF #8). On June 9, 2017 counsel for Defendant 1777 Westwood Limited Partnership and Farzin Halavy filed a Statement of Remediation or No Violation [ECF-25] stating that all barriers had been corrected (Def Statement of Uncontroverted Facts and Conclusions of Law, ECF-50-3, SUF #9).

Defendants' expert report, referenced in their Memorandum of Points and Authorities (ECF-50-4) as exhibit 1, analyzed the new disabled parking stall, its slope, and the Restaurant's restroom, which is now for

2

1    employees only. (See Exhibit 1 to Def MSJ, ECF-50-4). However,
2    Defendant's CASp inspector did not analyze the path of travel from the
3    disabled person parking stall to the accessible entrance or the access aisle,
4    both of which Plaintiff complained of (ECF-1, ¶¶ 14 & 15). Further,
5    defendant's claims regarding whether the disabled person (DP) stall is
6    compliant with the ADAAG are refuted by Plaintiff's own expert, CASp
7    and architect, Janis Kent. (See, Pl.'s MSJ, Ex. 10, pp. 4-5, Non-
8    compliance List pp. 1-3).

9        Plaintiff complained that there was 1) No compliant disabled
10   parking stall; 2) No ADA-compliant access aisles; 3) An obstructed Path
11   of Travel from the disabled parking stall to the entrance of the Restaurant;
12   and 4) That aspects of the restroom of the restaurant was not compliant
13   with the either the ADAAG's 1991 or 2010 standards. (See Plaintiff's
14   Complaint, ECF-1, ¶¶ 13-15).

15       On November 16, 2017, Plaintiff's expert, Janis Kent, conducted a
16   site inspection of the Restaurant. (Plaintiff's SUF #26). As of November
17   2017, Ms. Kent found that the Restaurant still contained barriers to access
18   regarding those issues Plaintiff complained of originally (Plaintif's MSJ,
19   SUF #27; ECF-1, ¶¶ 13-15). Upon inspection, CASp Inspector and
20   architect, Ms. Kent, found the following barriers, each related to issues
21   complained of in the complaint:

22       1. There was an accessible parking space demarcated, but the 9'
23   width of the actual space and the 8' width of the aisle were switched
24   making it non-compliant. (Plaintiff's SUF #28).

25       2. Additionally, the slope at the head of the disabled parking space
26   and access aisle were excessive; (Plaintiff's SUF #29).

27       3. Portions of the asphalt were decomposing with greater than ¼"
28   maximum surface differential. (Plaintiff's SUF #29).

Opposition to Defense MSJ                    **Case No**. 2:17-CV-00333-ODW-MRW

1       3. Further, the access aisle striping was non-compliant (SUF #30).

2       4. The disabled person parking stall's signage did not comply (ECF

3  1, ¶ 14. Plaintiff's SUF #31).

4       6. The path of travel leading from the accessible parking space had

5  excessive slopes on both sides of the entry door of over 4% on the exterior

6  and over 11% on the interior. (Plaintiff's SUF #33).

7       While Plaintiff concedes that the restroom is now a non-issue as it

8  is not open to the public, the remaining issues regarding the DP stall, the

9  access aisle, the signage, the slopes, and the path of travel remain non-

10  compliant with 1991 or 2010 Standards of the ADAAG. (Kent Report, Ex.

11  10, pp. 4-5, Non-compliance list. pp. 1-3).

12       Ms. Kent found several other barriers to access at the subject

13  property including the inaccessible path of travel from the pedestrian

14  walkway, the entrance to the restaurant, and dangerous walk off mats,

15  among others. (Ex. 10, Kent Report, Non-Compliance List, item 0.1).

16  Thus, if the Court permits, Plaintiff has filed a motion to amend the

17  Complaint (ECF-43) to ensure that all barriers at the Restaurant, from

18  parking, to paths of travel, to the entrance of the restaurant, etc., are

19  remediated fully and correctly as a part of the same case. It would make

20  little sense for Plaintiff to file an entirely separate lawsuit to achieve the

21  same goal as in the instant case: an accessible restaurant, compliant with

22  the ADA, and accessible to both ambulatory and disabled patrons alike.

23       In *Doran*, the Ninth Circuit also held that once a plaintiff

24  encounters one barrier at a site, he can sue to have all barriers that relate

25  to his disability removed regardless of whether he personally encountered

26  them. *Doran, supra,* 524 F.3d 1034 at 1045-1046. All of these barriers

27  will affect Plaintiff when she returns to the restaurant. Therefore, she has

28  standing to amend her complaint and seek remediation of these barriers,

4

as well. "Concerns of judicial economy" warrant rejection of an approach that would "require disabled plaintiffs to engage in piecemeal litigation to eliminate barriers the ADA prohibits." *Doran v. 7-11*, 524 F.3d 1034, 1046 (9th Cir. 2008). Because piecemeal litigation will result if Defendants' motion is granted, the Court should deny Defendants' motion in its entirety.

## IV.   The Store Had Barriers That Were Readily Removed

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991). Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any element in facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and

Opposition to Defense MSJ                    **Case No**. 2:17-CV-00333-ODW-MRW

"precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.*

#### Parking barriers

The lack of accessible parking constitutes a barrier. Under the 1991 Standards, any business that provides parking spaces must provide parking spaces marked as reserved for persons with disabilities. 1991 Standards § 4.1.2(5)[1]. One in every eight of those accessible parking spaces, but not less than one, must be a "van" accessible parking space, *i.e.*, having an eight foot (96 inch wide) access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six of those accessible parking spaces, but not less than one, must be "van" accessible, i.e. having an eight foot access aisle, or alternatively, having a stall measuring 132 inches in width with a 60 inch adjacent access aisle. 2010 Standards § 502.2.[2]

Further, to qualify as a reserved accessible parking space, the space must be properly marked and designated. Under the ADA, the method,

---

[1] The 1991 Standards are found at 28 C.F.R., Part 36, Appendix "D" and the 2010 Standards are found at 36 C.F.R., Part 1191, Appendices "B" and "D." The correct title of the 1991 Standards is "1991 Standards for Accessible Design." However, in the earliest published decisions, courts and practitioners mistakenly referred to these Standards as the Americans with Disabilities Act Accessibility Guidelines (ADAAG), perhaps not understanding that the ADAAG promulgated by the Access Board were not the enforceable Standards but merely guidelines or recommendations made to the Department of Justice. When the DOJ adopted them, they were renamed as Standards in the Federal Register. But the original name stuck.

[2] The Plaintiff recognizes that, technically, either the 1991 Standards or the 2010 Standards govern in this case, but not both simultaneously. However, both Standards are cited to demonstrate that it does not matter which Standard is applied because the parking did not comply with either Standard.

color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2

Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id.* Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id.* Additionally, the words "NO PARKING" shall be painted on the ground within each 8-foot… loading and unloading access aisle. This notice shall be painted in white letters no less than 12 inches… high and located so that it is visible to traffic enforcement officials." CBC § 11B-502.3.3.

Here, the Restaurant did not have a single compliant accessible parking space on the date of Plaintiff's visit in September 2016. (Plaintiff's SUF # 8-11; ECF-1, ¶¶ 13 & 14). As of November 16, 2017, when Plaintiff's expert inspected the property, the parking, among other features, was still not compliant. (Pl.'s SUF #28-31; Kent Report Ex. 10, p. 4, Non-compliance list, item 0.2).

7

1    Providing and maintaining accessible parking is readily achievable.
2   Even a cursory review of the Code of Federal Regulations indicates that
3   this type of action, i.e., providing accessible parking, is of the type of
4   action that is identified as presumed to be readily achievable. 28 C.F.R. §
5   36.304(b)(18). Indeed, defendants attempted to remedy the parking
6   violation but failed to remedy it to code. (Pl.'s SUF #25). Thus, the
7   question of whether this barrier was readily achievable to remove has been
8   definitively answered in Plaintiff's favor. See <u>Wilson v. Pier 1 Imports</u>
9   <u>(US), Inc</u>., 439 F.Supp.2d 1054, 1069 (E.D. Cal. 2006) ("Given that the
10  barrier has already been cured, the court must find that it was readily
11  achievable, and thus that it violated the ADA and subsequently the Unruh
12  Act.").
13    In sum, Plaintiff personally encountered this barrier to access when
14  she attempted to park her van. Defendants' failure to remove these readily
15  achievable barriers to access was (and is) a violation of the ADA.
16
17  **A.    The Plaintiff Encountered This Violation and Is Being**
18        **Deterred From Patronage**
19    Not only did Ms. Lindsay personally encounter this violation, and
20  the several others discussed supra, but she has been deterred from
21  patronizing the restaurant due to her knowledge of the barriers to access.
22  Lindsay was deterred from patronizing the Restaurant due to encountering
23  the same barriers to access.   Defendants are required to provide an
24  accessible parking space for use by persons with disabilities. They are also
25  required to bring into compliance the additional barriers that are related to
26  Ms. Lindsay's disabilities, such as an accessible path of travel from the
27  parking to the accessible entrance. Until Defendant is ordered to do so,
28  plaintiff will continue to be aggrieved by these barriers.

8

1    In sum, there has been a violation of the American with Disabilities

2    Act.

3

4    **V.  THE LACK OF COMPLIANT PARKING IS UNLAWFUL**

5    **UNDER CALIFORNIA LAW**

6    The Unruh Civil Rights Act provides that "a violation of the right of any

7    individual under the Americans with Disabilities Act of 1990 shall also

8    constitute a violation of this section." Civ. Code § 51 (f).  "A violation of

9    the ADA is, by statutory definition, a violation of both the Unruh Act and

10   the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal.

11   2012). "Because the Unruh Act is coextensive with the ADA and allows

12   for monetary damages, litigants in federal court in California often pair

13   state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at

14   731. As discussed above under section "IV", the defendants violated the

15   ADA. Thus, there has been a per-se violation of Unruh.

16

17   **VI.  THE COURT SHOULD RETAIN SUPPLEMENTAL**

18   **JURISDICTION**

19   Plaintiff maintains that injunctive relief is not moot. Defendant's

20   remediation of the property is still not compliant, and several barriers

21   continue to exist regarding those issues Plaintiff complained of in her

22   Complaint, as detailed supra. Moreover, several barriers remain at the

23   property that affect plaintiff's disability, as outlined above, and contended

24   in Plaintiff motion for relief of the scheduling order to file a First

25   Amended Complaint (ECF-43). However, in the event the Court finds

26   injunctive relief is moot, the Court should retain supplemental jurisdiction

27   over Plaintiff's state law claims. Contrary to the defense's assertion, when

28   the federal claims are dismissed from the case, the District Court has

9

1   discretion whether to maintain its supplemental jurisdiction over the state
2   claims or dismiss them. *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th
3   Cir. 1991). The "justification" underlying the decision whether to
4   maintain supplemental jurisdiction or dismiss a case, "lies in
5   considerations of judicial economy, convenience and fairness to
6   litigants…" *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726
7   (1966). In fact, the Courts have recognized that judicial economy is the
8   "*essential policy* behind the modern doctrine of pendent jurisdiction" and
9   it supports "the retention of pendent jurisdiction in any case where
10  substantial judicial resources have already been committed, so that
11  sending the case to another court will cause a substantial duplication of
12  effort." *Id*. (emphasis added), citing *Rosado v. Wyman*, 397 U.S. 397, 405
13  (1970)

14      Since *Gibbs*, the Supreme Court has "shunned" any sort of knee-
15  jerk dismissal preference in favor of a "common sense policy of pendent
16  jurisdiction - the conservation of judicial energy and the avoidance of
17  multiplicity of litigation." *Rosado*, 397 U.S. at 405. In other words, there
18  must be a consideration of the impact that dismissal will have on judicial
19  economy with an eye towards the avoidance of multiplicity of litigation.
20  "In deciding whether to extend supplemental jurisdiction over pendent
21  state claims, courts must consider and weigh whether the extension of
22  jurisdiction will serve the principles of judicial economy, convenience and
23  fairness to the litigants, and comity to the states." *Carnegie-Mellon Univ.
24  v. Cohill*, 484 U.S. 343, 350, fn. 7 (1988).

25      Thus, in cases where the federal claim is dropped at a stage of the
26  litigation where there has been substantial investment of resources,
27  common sense and judicial economy warrant the keeping of the case.
28  *Aydin Corp. v. Loral Corp.* 718 F.2d 897, 904 (9th Cir. 1983). In *Aydin*,

---

1    the district court was found to have acted properly in keeping the case,
2    "because the record shows that the court and the litigants had expended
3    considerable time on the pendent claims before the antitrust claims were
4    dismissed." *Id.* Similarly, in *State of Ariz.*, the Ninth Circuit found that the
5    district court correctly kept the case where, "the court and the litigants had
6    expended considerable time on [the state claims] before the [federal claim]
7    was dismissed." *State of Ariz. v. Cook Paint & Varnish Co.*, 541 F.2d 226,
8    227 -228 (9th Cir. 1976). And in *Brady v. Brown*, the district court acted
9    properly in considering, "whether a return to state court would have been
10   a waste of judicial resources when the case had been in federal court for
11   some time" and the 9th Circuit approved the fact that the "district court
12   decided to retain the state claims based in part on the efforts already
13   expended by counsel." *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995).

14       In *In re Nucorp Energy*, the Ninth Circuit found that the district
15   court correctly kept the case where the, "district court was eminently
16   familiar with the facts and issues . . . and was right in not imposing
17   unnecessarily on a state court or on [the parties] a repetition of pleadings,
18   motions, discovery and other pre-trial proceedings." *In re Nucorp Energy*
19   *Securities Litigation*, 772 F.2d 1486, 1491 (9th Cir. 1985). The *Enercomp*
20   case is even more helpful. In *Enercomp*, the Court agreed that the District
21   Court acted appropriately in keeping the case and reasoned:

22           [I]t would have stood judicial economy on its head not to
23           proceed with the state claims even if the securities action had
             been dismissed prior to trial. The case had involved over
24           eleven months of often-heated pretrial litigation. The district
             court had already issued numerous memoranda and orders.
25           Dispositive motions were not filed until the very eve of trial.
             Under such circumstances, it would have been a pointless
26           waste of judicial resources to require a state court to invest
             the time and effort necessary to familiarize itself with a case
27           well-known to the presiding federal judge. It would have
             been unfair to the plaintiffs to transfer a case scheduled for
28           trial within days in federal court to a state tribunal where it
             would have had to wait perhaps months to be heard. This

---

11

1

court sees no inconvenience to either party from the exercise
of pendent jurisdiction in this case.

2

*Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 546
(2nd Cir. 1989).

3

4      The facts in the present case are similar. Here, the parties have

5 already been litigating the case for over nine months, conducting written

6 discovery and attending an expert site inspection. The case has been

7 successful in motivating Defendants to finally bring their property into

8 compliance. Unfortunately, the job is not yet done. As noted above, it

9 would be a waste of resources for both parties and for the court for plaintiff

10 to have to file an entirely new lawsuit to obtain full compliance and recoup

11 the damages to which he is entitled. The words of the *Enercomp* court

12 seem directly on point, "under such circumstances, it would have been a

13 pointless waste of judicial resources to require a state court to invest the

14 time and effort necessary to familiarize itself with a case well-known to

15 the presiding federal judge." *Enercomp*, 873 F.2d at 546.

16      As such, this Court acts properly in keeping the modest remaining

17 state claim. Doing so certainly does not infringe upon any principle of

18 *comity*, especially given that the state claim is entirely predicated upon a

19 federal violation. In fact, the concept of comity weighs heavily *in favor of*

20 keeping the present case in federal court under these circumstances.

21 "There may, on the other hand, be situations in which the state claim is so

22 closely tied to questions of federal policy that the argument for exercise

23 of pendent jurisdiction is particularly strong." *Gibbs*, 383 U.S. at 727.

24      In fact, plaintiff's counsel has found that most district courts that

25 actually take the time to weigh the factors will keep supplemental

26 jurisdiction over the state claims under these circumstances. See, for

27 example the following cases:

28

---

12

*Hernandez v. Polanco Enterprises, Inc.*, 624 Fed.Appx. 964 (9th Cir. 2015) (where the plaintiff brought an ADA/Unruh barrier case. The defendants fixed the violations and mooted the ADA claim. The district erred by finding the Unruh Act claim also moot. The Ninth Circuit reversed and directed the district court to not only exercise jurisdiction but reach the merits of the Unruh Act claim.

*Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1131 (C.D. Cal. 2005) ("Because plaintiff's state law claims arise from the same conduct as her ADA claims, and because discovery and motion practice are complete with respect to the state law claims, the Court finds that these values are best served by retaining jurisdiction over plaintiff's state law claims, and accordingly, reaches the merits of these claims.");

*LaFleur v. S&A Family LLC*, 2014 WL 2212018, *5 (C.D. Cal. 2014) (finding the ADA claim moot but maintaining supplemental jurisdiction over the Unruh claim and holding, "in this action, the considerations of judicial economy, convenience, and fairness outweigh the  principle of comity. Because LaFleur's state law claims arise from the same conduct as her ADA claim . . . dismissing this action at this stage of proceedings would be a waste of judicial resources. Furthermore, this action does not present novel or complex issues of state law because the state claims are premised entirely on the ADA violation and seek only a single statutory award under state law. Therefore, economy, convenience, and fairness are best served by retaining jurisdiction over LaFleur's state claims.");

*Munson v. Del Taco, Inc.*, 2006 WL 4704611, *6 (C.D. Cal. 2006) (granting the defense motion for summary adjudication of the ADA barrier claim on the basis of fixed-mootness but then exercising supplemental jurisdiction over the state claim, granting the plaintiff's motion for summary adjudication of the Unruh Civil Rights Act);

*Martinez v. Longs Drug Stores, Inc.*, 2005 WL 2072013, *6 (E.D. Cal. 2005) (same);

*Langer v. McHale*, 2014 WL 5422973, *1 (S.D. Cal. 2014) ("As stated at the hearing, this case has been heavily litigated in this Court. It would be unreasonable to require Plaintiff to refile the damage claims in state court after litigating the matter for almost one year.")

13

1

## VII.  CONCLUSION

2

The plaintiff respectfully requests this Court deny defendants'

3

motion.

4

5

6

Dated: March 19, 2018          CENTER FOR DISABILITY ACCESS

7

8

By: /s/ Sara N. Gunderson

9

Sara Nicole Gunderson
Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14