CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shirley Lindsay**,<br><br>        Plaintiff,<br><br>     v.<br><br>**1777 Westwood Limited Partnership,** a California Limited Partnership;<br>**Farzin Halavy;**<br>**Sutthiwan Soontornvipat**;<br><br>        Defendants. | **Case:**2:17-CV-00333-ODW-MRW<br><br>**Plaintiff's Memorandum of Points and Authorities**<br><br>Date:     April 23, 2018<br>Time:    1:30 p.m.<br>Ctrm:    5D (5th Floor)<br><br><br>Hon. Judge Otis D. Wright II |

1
2

# TABLE OF CONTENTS

3   TABLE OF CONTENTS .................................................................................. i

4   TABLE OF AUTHORITIES ........................................................................... ii

5   MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

6
7   I.    PRELIMINARY STATEMENT ..................................................... 1

8   II.   RELEVANT FACTS ....................................................................... 2

9   III.  LEGAL STANDARD ...................................................................... 5

10
11   IV.   THE LACK OF ACCESSIBLE PARKING ................................. 6

12      A.  Plaintiff is Disabled .................................................................. 8

13      B.  Defendant Owns the Property where the Public Accommodation is Located

14      and is the Lessor ........................................................................... 8

15      C.  The Restaurant Had Barriers That Were Readily Removed ....... 8

16
17      D.  The Plaintiff Encountered This Violation and Is Being Deterred From

18      Patronage ...................................................................................... 13

19   V.   THE LACK OF COMPLIANT PARKING IS UNLAWFUL UNDER

20   CALIFORNIA LAW ............................................................................... 13

21   VI.   REMEDIES .................................................................................... 14

22   VII.  CONCLUSION .............................................................................. 15

23
24
25
26
27
28

i

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*

   603 F.3d 666 (9th Cir. 2010) ................................................................6

*Celotex Corp. v. Catrett*

   477 U.S. 317 (1986) ..............................................................................5

*Chapman v. Pier 1 Imports (U.S.) Inc.*

   631 F.3d 939 (9th Cir. 2011) ...........................................................6, 9

*Cullen v. Netflix, Inc.,*

   880 F.Supp.2d 1017 (N.D. Cal. 2012) ...............................................14

*Moeller v. Taco Bell Corp.*

   816 F.Supp.2d 831 (N.D. Cal. 2011) ..................................................6

*Molski v. M.J. Cable, Inc.,*

   481 F.3d 724 (9th Cir. 2007) .......................................................14, 15

*Rush v. Denco Enterprises, Inc.,*

   857 F. Supp. 2d 969 (C.D. Cal. 2012) .................................................9

**Statutes**

1991 Standards § 4.1.2(5)(b) ....................................................................9

2010 Standards § 208.2.4 ........................................................................10

42 U.S.C. § 12102(2)(A) ...........................................................................8

42 U.S.C. § 12181(7)(B) ...........................................................................8

42 U.S.C. § 12181(7)(F) ............................................................................8

42 U.S.C. § 12188(a) ................................................................................7

42 U.S.C. §§ 12183(a)(2) ..........................................................................7

Cal. Civ. Code § 55.56(a) .......................................................................14

Cal. Civ. Code § 55.56(b) .......................................................................14

Cal. Civ. Code § 55.56(e) ........................................................................14

ii

Civ. Code § 51 (f) ...................................................................................13

**Other Authorities**

28 C.F.R. § 36.304(b) ...........................................................................11

28 C.F.R., Part 36, Appendix D

("ADAAG") § 4.27 ............................................................................9

CBC § 1129B.4.......................................................................................10

CBC § 11B-502.2....................................................................................10

CBC § 11B-502.3.3.................................................................................11

Department of Justice, Technical Assistance Manual on the American with

Disabilities Act (BNA) §§ III-4.4100 (1991) ......................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  PRELIMINARY STATEMENT

Plaintiff Shirley Lindsay suffers from arthritis (osteoarthritis of multiple joints; spinal stenosis of the lumbar spine; and essential hypertension) of her hands, knees, and hips. She alternates using both a cane and wheelchair for mobility. Ms. Lindsay, resides in Los Angeles County, where she shops, dines, travels, and visits with friends and family. Unfortunately, on many occasions, she has had to deal with the stress and frustration of the lack of accessible parking, the lack of accessible paths of travel, and other features that non-disabled people take for granted.

This occurred during a visit to the Thai Fresh Café ("Restaurant") located at or about 1771 Westwood Blvd, Los Angeles, California in September 2016. Instead of simply being able to park in the Restaurant's lot, and go inside the Restaurant to dine with her family, Ms. Lindsay once again found herself in the disappointing and frustrating, yet all-too-familiar situation of struggling to find van accessible parking, only to realize that she will not be able to park and enter the Restaurant. A simple thing like being able to park one's car is a basic service and privilege offered by the restaurant to its customers; however, this service was not extended to those individuals with disabilities. This service was unequivocally denied to Ms. Lindsay, and it was frustrating and troublesome for her. Once again, Ms. Lindsay was forced to search for an alternative place to dine because the Restaurant she chose did not make itself available to disabled patrons.

Although the law has required these simple accommodations for disabled Americans for 25 years, Shirley Lindsay is continuously confronted with inaccessible stores, bars, restaurants, shops, hotels, and

1

the like. And, she has been vilified for her decision to haul law breaking businesses before courts and tribunals of the state to hold them accountable. In this case, the Defendant's failure to provide van accessible parking is illegal and discriminatory under the ADA and has been for 25 years. Because Defendant has violated the law and excluded Ms. Lindsay and customers like her for over two decades, Ms. Lindsay seeks an Order finding that her rights were violated under the Unruh Civil Rights Act, and a singular statutory penalty of $4,000, automatically assessed. Plaintiff reserves injunctive relief for trial.

## II.   RELEVANT FACTS

Plaintiff Shirley Lindsay suffers from arthritis (osteoarthritis of multiple joints; spinal stenosis of the lumbar spine; and essential hypertension) of her hands, knees, and hips. She alternates using both a cane and wheelchair for mobility. (SUF #1). Ms. Lindsay drives a specially equipped van with a ramp that deploys from the passenger side of the van to accommodate her wheelchair. (SUF #2). Ms. Lindsay has a Disabled Person Parking Placard issued to her by the California Department of Motor Vehicles. (SUF #3). Defendant Sutthiwan Soontornvipat owned the Thai Fresh Café ("Restaurant") located at or about 1771 Westwood Blvd, Los Angeles, California in September 2016, and does so currently. (SUF #4). Defendant 1777 Westwood Limited Partnership's owned the property on which the Restaurant is located in September 2016, and does so currently. (SUF #5). Defendant Farzin Halavy is the partner of Def. 1777 Westwood Limited Partnership. (SUF # 6). The Restaurant is a business establishment and place of public accommodation. (SUF #7).

Plaintiff's Motion for Summary Judgment                    Case: 2:17-CV-00333-ODW-MRW

On September 17, 2016, Ms. Lindsay went to the Restaurant to eat. (SUF #8). When Ms. Lindsay arrived at the Restaurant, she attempted to park in the parking space designated for use by persons with disabilities. (SUF #9). However, she found that the blue hatch marks of the access aisle had faded to oblivion. (SUF #10). There was no "NO PARKING" warning lettering in the access aisle. (SUF #11). Ms. Lindsay needs a parking space with a clear access aisle to ensure she has enough room to get in and out of her vehicle and assemble her wheelchair. (SUF #12). She has had bad experiences in the past when she has parked in a parking space that did not have an access aisle, and then was trapped out of her vehicle when another car parked next to her. (SUF #13). She also needs a space with the proper signage and markings so that it is clear to non-disabled patrons that it is only for handicap persons to use. (SUF #14). Additionally, Ms. Lindsay realized that even if she parked, she would not be able to access the Restaurant, because the location of the designated parking space is such that once a vehicle is parked, it blocks the path of travel leading into the Restaurant. (SUF #15). As a result of these conditions, Ms. Lindsay was forced to leave and was deterred from patronizing the Restaurant.  This caused her distress, difficulty and frustration, as she wanted to dine inside the restaurant with her family. (SUF #16).

On January 4, 2017, Plaintiff's investigator, Evens Louis, conducted a follow up investigation of the Restaurant. (SUF #17). This time, he found that a vehicle was parked in the designated parking space. (SUF #18). Mr. Louis did not see any disabled person parking placard displayed on the vehicle. (SUF #19). Inside the restroom of the Restaurant, the mirror is mounted on the wall so that its bottom edge is approximately 43 inches above the floor. (SUF #20). The restroom sink is a cabinet style

3

1  sink that does not provide any knee clearance for wheelchair users. (SUF
2  #21). Subsequently Defendants have taken steps to improve accessibility
3  at the Restaurant. (SUF #22). They changed the restroom to be for
4  employees only, in which case, the ADA would not apply (SUF# 23). They
5  also attempted to fix the parking spaces and access aisle (SUF# 24).
6  However, the remediation falls short of code (SUF #25).

7      On November 16, 2017, Plaintiff's expert, CASp and architect,
8  Janis Kent, conducted a site inspection of the Restaurant. (SUF #26). As
9  of November, 2017, the Restaurant still contained barriers to access. (SUF
10  #27). There was an accessible parking space demarcated but the 9' width
11  of the actual space and the 8' width of the aisle were switched making it
12  non-compliant. (SUF #28). Additionally, the slope at the head of the space
13  and aisle were excessive and portions of the asphalt were decomposing
14  with greater than ¼" maximum surface differential. (SUF #29).
15  Additionally, the access aisle striping was non-compliant, and the signage
16  did not comply (SUF #30, 31). Ms. Kent found that there was no path of
17  travel from the public right of way leading to the entry without going
18  behind parked vehicles. (SUF #32). The path of travel leading from the
19  accessible parking space had excessive slopes on both sides of the entry
20  door of over 4% on the exterior and over 11% on the interior. (SUF #33).
21  Inside the restroom, the mirror was too high – a second mirror was not
22  compliant since it was loose and leaning against the wall. (SUF #34).

23      Ms. Lindsay lives in Los Angeles County and shops, seeks services,
24  and otherwise patronizes businesses throughout the County. (SUF #35).
25  Ms. Lindsay would love to be able to patronize the Restaurant.  It is well
26  reviewed and conveniently located for her. (SUF #36). Ms. Lindsay would
27  like the ability to safely and independently park and access the Restaurant.
28

4

1   (SUF #37). Once the violations are removed, Ms. Lindsay plans to
2   patronize the Restaurant regularly. (SUF #38).

3

4   ### III.   LEGAL STANDARD

5           Pursuant to section 56 of the Federal Rules of Civil Procedure, a
6   party can bring a motion for summary judgment (or partial summary
7   judgment) where there is no genuine dispute as to any material fact.
8   Motions for summary judgment are not "disfavored." *Celotex Corp. v.*
9   *Catrett*, 477 U.S. 317, 327 (1986). In the present case, Plaintiff awaits this
10  court's ruling on whether plaintiff has leave to amend the complaint to add
11  the additional barriers found during Plaintiff's expert's inspection of the
12  property, and mentioned in Plaintiff's expert's report (Ex. 10, Plaintiff's
13  Expert Report, Non-Compliance list, pp. 1-3). As such, plaintiff hereby
14  seeks partial summary judgment that her rights were violated under the
15  Americans with Disabilities Act, and therefore the Unruh Civil Rights Act,
16  and seeks a singular $4,000 statutory penalty (automatically assessed). As
17  such, Plaintiff awaits to seek injunctive relief for trial.

18          There can be no genuine dispute over whether Ms. Lindsay
19  encountered a barrier to access, which denied her equal enjoyment and
20  access to the Restaurant, causing her genuine frustration, embarrassment
21  and distress. The facts of the case inform the court and the parties that it
22  would be a waste of judicial resources for this issue to proceed to trial.
23  There is not a genuine issue of material fact regarding Ms. Lindsay's
24  encounter with the parking barriers, and this court should grant the
25  Plaintiff's motion for summary judgment.

26

27

28

## IV.  THE LACK OF ACCESSIBLE PARKING

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "discrimination" can be misleading. The ADA applies not just to intentional discrimination but to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

To succeed on her Title III, ADA claim, "a plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that is the owner, lessor, lessee, or operator of a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "The third element—whether plaintiffs were denied

Plaintiff's Motion for Summary Judgment                    Case: 2:17-CV-00333-ODW-MRW

public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman*, 631 F.3d at 945. This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);
2. The defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;
3. The defendants must be responsible parties, i.e., owners, operators, lessors or lessees. *Id.*;
4. The defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove. 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);
5. Plaintiff must have actually encountered this non-removed and unlawful barrier. 42 U.S.C. § 12188(a).

As discussed *infra*, Ms. Lindsay's civil rights were violated because Defendant failed to provide accessible parking, path of travel, and compliant fixtures in the restroom at the Restaurant. Plaintiff will discuss each element, seriatim.

7

## A.      Plaintiff is Disabled

Ms. Lindsay has severe mobility impairments. She suffers from arthritis (osteoarthritis of multiple joints; spinal stenosis of the lumbar spine; and essential hypertension) of her hands, knees, and hips. She alternates using both a cane and wheelchair for mobility. (SUF #1-3). There can be little doubt that she fits the qualification under the Americans with Disabilities Act as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability).  Given Ms. Lindsay's limited ability to walk, this is not a genuine issue.

## B.      Defendant Owns the Property where the Public Accommodation is Located and is the Lessor

The Restaurant is a place of public accommodation.  Restaurants are expressly identified under the ADA as places of public accommodation, which the Defendant admits. 42 U.S.C. § 12181(7)(B); (SUF #7). The Defendants are the owners and operators of the Restaurant. (SUF #4-6). The Defendants, therefore, have an obligation to comply with the anti-discrimination provisions of Title III of the Americans with Disabilities Act.

## C.      The Restaurant Had Barriers That Were Readily Removed

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

1
2
3

III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

4
5
6
7
8
9
10
11
12
13
14
15
16

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991). Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any element in facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.*

17
18
19
20
21
22
23

### 1. The Lack of accessible parking

The lack of accessible parking constitutes a barrier. Under the 1991 Standards, any business that provides parking spaces must provide parking spaces marked as reserved for persons with disabilities. 1991 Standards § 4.1.2(5)[1]. One in every eight of those accessible parking

24
25
26
27
28

[1] The 1991 Standards are found at 28 C.F.R., Part 36, Appendix "D" and the 2010 Standards are found at 36 C.F.R., Part 1191, Appendices "B" and "D." The correct title of the 1991 Standards is "1991 Standards for Accessible Design." However, in the earliest published decisions, courts and practitioners mistakenly referred to these Standards as the Americans with Disabilities Act Accessibility Guidelines (ADAAG), perhaps not understanding that the ADAAG promulgated by the Access Board were not the enforceable Standards but

9

spaces, but not less than one, must be a "van" accessible parking space, *i.e.*, having an eight foot (96 inch wide) access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six of those accessible parking spaces, but not less than one, must be "van" accessible, i.e. having an eight foot access aisle, or alternatively, having a stall measuring 132 inches in width with a 60 inch adjacent access aisle. 2010 Standards § 502.2.[2]

Further, to qualify as a reserved accessible parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2

Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id.* Another sign

---

merely guidelines or recommendations made to the Department of Justice. When the DOJ adopted them, they were renamed as Standards in the Federal Register. But the original name stuck.

[2] The Plaintiff recognizes that, technically, either the 1991 Standards or the 2010 Standards govern in this case, but not both simultaneously. However, both Standards are cited to demonstrate that it does not matter which Standard is applied because the parking did not comply with either Standard.

1   must be posted in a conspicuous place at the entrance to the parking lot or

2   immediately adjacent to each handicap parking space, with lettering 1 inch

3   in height, that clearly and conspicuously warn that unauthorized vehicles

4   parking in the handicap parking spaces can be towed at the owner's

5   expense. *Id.* Additionally, the words "NO PARKING" shall be painted on

6   the ground within each 8-foot… loading and unloading access aisle. This

7   notice shall be painted in white letters no less than 12 inches… high and

8   located so that it is visible to traffic enforcement officials." CBC § 11B-

9   502.3.3.

10      Here, the Restaurant did not have a single compliant accessible

11   parking space on the date of Plaintiff's visit in September 2016 visit. (SUF

12   # 9-11); and as of the date of Plaintiff Investigator Mr. Louis's inspection

13   on January 3 and January 4, 2017, the parking, access aisle and path of

14   travel still did not comply to code, as discussed, supra (SUF # 9-11 & 17-

15   19).  As of November 16, 2017, when Plaintiff's expert inspected the

16   property, the parking continued to be not compliant. (SUF #27-31).

17      Providing and maintaining accessible parking is readily achievable.

18   Even a cursory review of the Code of Federal Regulations indicates that

19   this type of action, i.e., providing accessible parking, is of the type of

20   action that is identified as presumed to be readily achievable. 28 C.F.R. §

21   36.304(b)(18). Indeed, defendants have claimed that they remediated the

22   complained of barriers to access at the subject property (though Plaintiff

23   disputes that the remediation is compliant with the law). However,

24   because defendants attempted remediation, the question of whether this

25   barrier was readily achievable to remove has been definitively answered

26   in Plaintiff's favor. See Wilson v. Pier 1 Imports (US), Inc., 439 F.Supp.2d

27   1054, 1069 (E.D. Cal. 2006) ("Given that the barrier has already been

28

11

cured, the court must find that it was readily achievable, and thus that it violated the ADA and subsequently the Unruh Act.").

In sum, Plaintiff personally encountered this barrier to access when she attempted to park her van. Defendants' failure to remove these readily achievable barriers to access is a violation of the ADA.


### 2. The Lack of accessible path of travel

There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. The minimum clear width of an accessible route shall be 36 inches. 1991 Standards § 4.3.3.

Here, on the date of Plaintiff's visit, defendants failed to provide a clear, unobstructed path of travel from the disabled parking ("DP") stall to the entrance of the Restaurant. The path of travel was blocked once a car, including plaintiff' car, was parked in the non-compliant DP stall. Failure to provide an accessible path of travel into the Restaurant from the DP stall, when a vehicle, including plaintiff's vehicle, is parked in the parking space reserved for persons with disabilities is a violation of the ADA. (SUF #15).

As of November 16, 2017, when Plaintiff's expert inspected the property, the path of travel was still not compliant. (SUF #32 & 33).

In sum, Plaintiff personally encountered this barrier to access when she attempted to park her van. Defendants' failure to remove these readily achievable barriers to access is a violation of the ADA.

12

**D.      The Plaintiff Encountered This Violation and Is Being Deterred From Patronage**

Not only did Ms. Lindsay personally encountered the parking and path of travel violation, she has been deterred from patronizing the Restaurant due to her knowledge of the barriers to access. Defendant is required to provide an accessible parking space for use by persons with disabilities. They are also required to bring into compliance the additional barriers that are related to Ms. Lindsay's disabilities, such as an accessible path of travel from the parking to the entrance of the Restaurant. Until Defendant is ordered to do so, plaintiff will continue to be aggrieved by these barriers.

In sum, there has been a violation of the American with Disabilities Act.

## V.   THE LACK OF COMPLIANT PARKING IS UNLAWFUL UNDER CALIFORNIA LAW

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f).  "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731. As discussed above under section "IV", the defendants violated the ADA. Thus, there has been a per-se violation of Unruh.

1

2
## VI.   REMEDIES

3        The Plaintiff seeks statutory damages. As outlined above, Ms.

4   Lindsay is frequently in the area where the Restaurant is located as Los

5   Angeles County is her home (SUF #35).   The Restaurant is one of the

6   places she would like to patronize and she intends to return once the

7   barriers are removed. (SUF #36-38). Thus, Ms. Lindsay has standing to

8   seek the fix.

9        Statutory damages can be recovered for a violation of the Unruh

10  Civil Rights Act "if the violation denied the plaintiff full and equal access

11  to the place of public accommodation on a particular occasion." Cal. Civ.

12  § 55.56(a). A denial of full and equal access takes place where a plaintiff

13  "personally encountered" the violation and it resulted in "difficulty,

14  discomfort or embarrassment." Cal. Civ. § 55.56(b). Under the Civil Code,

15  the plaintiff is entitled to recover a statutory penalty for "each offense"

16  (Cal. Civ. Code § 52(a)) which has been defined as "each particular

17  occasion that the plaintiff was denied full and equal access…" Cal. Civ.

18  Code § 55.56(e). A plaintiff can recover for both actual encounters and

19  occasions where personal knowledge of a barrier deterred the plaintiff

20  from attempting patronage. Cal. Civ. § 55.56(b).

21        Here, Ms. Lindsay personally encountered the access standards

22  violations during her September 2016 visit. Ms. Lindsay seeks one penalty

23  for her September 2016 visit and encounter with barriers to access. There

24  are no genuine issues in dispute here and the Plaintiff is entitled to the

25  statutory award of $4,000 under the Unruh Civil Rights Act for each of

26  her encounters and a deterrence. "The litigant need not prove she suffered

27  actual damages to recover the independent statutory damages of $4,000."

28  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). Plaintiff

14

seeks an award of $4,000.

## VII.   CONCLUSION

The Plaintiff respectfully requests this Court grant her motion.


Dated: March 19, 2018                CENTER FOR DISABILITY ACCESS


                                     By: /s/ Sara N. Gunderson
                                         Sara N. Gunderson
                                         Attorneys for Plaintiff

Plaintiff's Motion for Summary Judgment              Case: 2:17-CV-00333-ODW-MRW